# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

DANA CORBO,                                )         Case No.: 2:10-cv-0316-GMN-LRL
                                           )
                        Plaintiff,         )              **ORDER**
                                           )
        vs.                                )
                                           )
RONALD W. LAESSIG, *et al.*,               )
                                           )
                        Defendants.        )
_____        )

        Before the Court is Defendants Fidelity Federal Financial Services Corporation, Fidelity Federal Group, Fidelity Federal Retirement Plans Corporation (hereinafter "Fidelity Federal Group") and Ronald W. Laessig's ("Mr. Laessig") Motion to Dismiss (ECF No. 10) for lack of personal jurisdiction and venue.  Plaintiff Dana Corbo filed a Response on May 14, 2010 (ECF No. 18).  Fidelity Federal Group and Laessig filed a Reply and Counter Motion to Strike parts of Plaintiff's Response on June 4, 2010 (ECF No. 25).

        Also before the Court is Defendants The Trustees of the United Employee Benefit Fund, United Employee Benefit Fund, United Employee Benefit Fund Trust Agreement's (hereinafter "UEBF") Motion to Dismiss (ECF No. 22) for failure to state a claim, ERISA preemption and lack of venue.  Fidelity Federal Group filed a Joinder to UEBF's Motion to Dismiss (ECF No. 26).  Plaintiff filed a Response on June 21, 2010 (ECF No. 30) and UEBF filed a Reply on July 12, 2010 (ECF No. 35).

## FACTS AND BACKGROUND

        This case arises out of a dispute regarding the purchase of a life insurance policy. The policy was purchased by the United Employee Benefit Fund (UEBF) to provide a death benefit to Plaintiff.  Plaintiff contends that the policy was purchased by UEBF, on behalf of

Plaintiff, in consideration for the payment by Plaintiff in the approximate amount of $586,243.00. (*Id.*).  Subsequent to the issuance of the Policy, UEBF cashed out the Policy and retained the full amount of Plaintiff's proceeds, i.e. $586,243.00. (*Id.* at ¶13).  Plaintiff alleges that UEBF knew that Plaintiff was unqualified for the policy at the time the policy was purchased intending for the $586,243.00 to revert back to UEBF. (*Id.*).

Plaintiff brings claims of (1) breach of fiduciary duty, (2) concealment, (3) negligence, (4) unjust enrichment, (5) breach of contract, and (6) breach of implied covenant of good faith and fair dealing arising out of and related to Defendants' conduct in issuing the Policy and inducing Plaintiff to buy the Policy that he was unqualified for.

## DISCUSSION

### 1.     Motion to Dismiss (ECF No. 10) Lack of Personal Jurisdiction and Venue

Defendants Fidelity Federal Financial Services Corporation, Fidelity Federal Group, Fidelity Federal Retirement Plans Corporation (hereinafter "Fidelity Federal Group") and Ronald W. Laessig ("Mr. Laessig") filed a Motion to Dismiss (ECF No. 10) for lack of personal jurisdiction and venue.  However, the Court will first address Defendants' Motion to Strike (ECF No. 25) parts of Plaintiff's Response because the outcome of this motion determines what evidence is available to the Court to determine jurisdiction of the parties.

### A.     Motion to Strike

Defendants move for the Court to strike the affidavit of Mr. Corbo as well as exhibits 1, 3, 4, 5, and 6. Defendants did not file any points and authorities in its initial motion. Failure to file points and authorities is grounds for denial—LR 7-2(c).

 Defendants argue in their Reply that these documents should be disallowed based on Federal Rule of Evidence 403 because they are unfairly prejudicial and the prejudice outweighs any probative value that the evidence might otherwise have.  "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of

unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. of Evid. 403.  It seems that the crux of Defendants' arguments is that the affidavit and exhibits pertaining to Betty Corbo are immaterial to this action.  The Court agrees to a certain extent. The affidavit of Mr. Corbo does contain material facts and information for the Court in this case.  Likewise, Exhibit 1 contains letters from Mr. Laessig to Mark Solomon (who appears to be Mr. Corbo's attorney) and from Mr. Laessig to Mr. Corbo.  These letters are actually relevant to show the position of Mr. Laessig within Fidelity Federal Group.  Thus, the Court will not strike the Affidavit or Exhibit 1.

However, Exhibits 3, 4 and 5 are documents from a different court case involving Betty Corbo and Mr. Laessig.  The Court finds these immaterial and unnecessary to its decision, therefore, they will be stricken.  Finally, Defendants argue that Exhibit 6 is an irrelevant, inadmissible, unauthenticated webpage.  The Court finds that Exhibit 6 has no determinative effect on the outcome of its decision so the Court denies Defendants' Motion to Strike Exhibit 6 as moot.

### B.    Personal Jurisdiction

The Court now addresses Defendants Fidelity Federal Financial Services Corporation, Fidelity Federal Group, Fidelity Federal Retirement Plans Corporation (hereinafter "Fidelity Federal Group") and Ronald W. Laessig's ("Mr. Laessig") Motion to Dismiss (ECF No. 10) for lack of personal jurisdiction and venue.  The Plaintiffs have the burden of establishing personal jurisdiction by demonstrating jurisdiction is: (1) permitted under the applicable state's long-arm statute, and (2) that the exercise of jurisdiction does not violate federal due process." *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995).  The personal jurisdiction of a federal court is limited to the breadth of the state court's personal jurisdiction in the state in which the federal court sits. *Omni Capital Int'l. v. Rudolf Wolff &*

1   *Co., Ltd.*, 484 U.S. 97, 104–05, 108 S. Ct. 404 (1987).  Under N.R.S. § 14.065, Nevada state

2   courts have personal jurisdiction limited only by the Nevada and United States Constitutions.

3   *Graziose v. American Home Prod. Corp.*, 161 F.Supp.2d 1149, 1152 (D. Nev. 2001)

4   (jurisdiction may be exercised to the extent "not inconsistent with the Constitution of this

5   state or the Constitution of the United States").

6           Personal jurisdiction has been limited under the Constitution to defendants that have

7   "certain minimum contacts with [a state] such that the maintenance of a suit does not offend

8   'traditional notions of fair play and substantial justice.'"  *Core-Vent Corp. v. Nobel Indus.*

9   *AB*, 11 F.3d 1482, 1485 (9th Cir. 1993) (quoting *Int'l. Shoe Co. v. Washington*, 326 U.S.

10  310, 316 (1945)).  Sufficient minimum contacts may be shown through specific jurisdiction,

11  wherein the specific interaction with the forum relating to the cause of action gives rise to the

12  contacts, or through general jurisdiction, wherein the contacts with the forum are systematic

13  and continuous, warranting the exercise of personal jurisdiction.  If such contacts are

14  established, a court must still determine that exercising personal jurisdiction would not

15  offend the "traditional notions of fair play and justice."  *Int'l Shoe Co.*, 326 U.S. at 316.

16          To establish general personal jurisdiction, the plaintiff must demonstrate the

17  defendant has sufficient contacts to "constitute the kind of continuous and systematic general

18  business contacts that 'approximate physical presence.'"  *Glencore Grain Rotterdam B.V. v.*

19  *Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1124 (9th Cir. 2002)(*quoting Bancroft &*

20  *Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir.2000), *modified, Yahoo!*

21  *Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th

22  Cir.2006)).  Courts consider such factors as whether the defendant makes sales, solicits or

23  engages in business in the state, serves the state's markets, designates an agent for service of

24  process, holds a license, or is incorporated there. *Bancroft*, 223 F.3d at 1086.  "[A] defendant

25  whose contacts are substantial, continuous, and systematic is subject to a court's general

jurisdiction even if the suit concerns matters not arising out of his contacts with the forum." *Glencore Grain*, 284 F.3d at 1123 (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 n. 9, 104 S.Ct. 1868).

Specific personal jurisdiction is established if plaintiff can show: (1) the defendant has performed some act or transaction within the forum or purposefully availed himself of the privileges of conducting activities within the forum, (2) the plaintiff's claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction over the defendant is reasonable. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155–56 (9th Cir. 2006). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir.1995).

Under the first prong of the specific jurisdiction test the plaintiff must establish either that the defendant "(1) purposefully availed himself of the privilege of conducting his activities in the forum, or (2) purposefully directed his activities toward the forum." *Pebble Beach Co.*, 453 F.3d at 1155. "Evidence of availment is typically action taking place in the forum that invokes the benefits and protections of the laws in the forum." *Id.* Evidence of direction usually consists of directing conduct from outside the forum into the forum. *Id.* at 1155-56.

The second prong of the specific jurisdiction test requiring that the contacts constituting purposeful availment or purposeful direction give rise to the current action is measured in terms of "but for" causation. *Id.* at 1088. "If the plaintiff establishes both prongs one and two, the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir.2008) (quotation omitted).

Ordinarily, "minimum contacts" of a nonresident employer's agents or employees are

imputed to the employer.  For example, contracts negotiated or torts committed by employees within the scope of their employment may subject a nonresident employer to local jurisdiction. *Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1189 (9th Cir. 2002).  Each defendant's contacts with the forum state must be assessed individually. *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482 (1984).  Defendants Fidelity Federal Group and Mr. Laessig challenge the Court's personal jurisdiction over them.  Therefore, the Court will assess Fidelity Federal Group's contacts first and then Mr. Laessig's.

### 1.    Defendants Fidelity Federal Group

Plaintiff presents evidence to establish specific jurisdiction over Defendants Fidelity Federal Group based on Mr. Laessig's specific interaction with Nevada relating to the causes of action.  Mr. Laessig traveled to Nevada and met with Plaintiff in Las Vegas 2 to 6 times per year over a period of 10 years to sell Plaintiff insurance. (Affidavit ¶8 p. 2, ECF No. 18). Correspondence between Plaintiff and Mr. Laessig and Fidelity was sent to Plaintiff in Las Vegas. (*Id.* at ¶11 p. 3).  When the Policy at issue was issued in January of 2006, Plaintiff was living in Las Vegas. (*Id.* at ¶17, p. 4).  Mr. Laessig would send correspondence to Mr. Corbo at his Las Vegas address.  (Letters, Ex. 1, ECF No. 18-1).

Defendants argue that the Court lacks specific personal jurisdiction over Fidelity Federal Group.  They assert specific personal jurisdiction is lacking because (1) they did not purposefully avail themselves of the benefit of Nevada laws, (2) the underlying action is not based upon activities that arise out of or relate to the defendants' contacts with the forum and (3) jurisdiction would be unreasonable.

Contrary to Defendants' assertions, the Court finds that it does have specific jurisdiction over Fidelity Federal Group.  Mr. Laessig is listed as either a president or vice president of Fidelity Federal Group in the correspondence sent to Mr. Corbo and Mr. Solomon. (*See* Letters).  This establishes a principal agent relationship, whereas the actions

of Mr. Laessig can be imputed to Fidelity Federal Group.  Mr. Laessig purposefully availed himself of the benefit of Nevada laws when he undertook to sell insurance on behalf of Fidelity Federal Group in Nevada.  Mr. Laessig and Fidelity Federal Group benefited financially from the negotiations Mr. Laessig had with Mr. Corbo to convert his DBO Lafayette policy to a Fidelity Federal policy.  But for Mr. Laessig's contacts with Mr. Corbo his policy would not have been converted to the Fidelity Federal policy and the loss Mr. Corbo alleges took place would not have happened.   Furthermore, Defendants have failed to present a compelling case, if any at all, that the exercise of jurisdiction would in fact be unreasonable. *See Boschetto*, 539 F.3d at 1016.

## 2.      Defendant Laessig

Defendants argue that personal jurisdiction is lacking for Mr. Laessig because he is protected by the "fiduciary shield" doctrine.  Under the "fiduciary shield" doctrine, if an individual's only contacts with a particular state are in his capacity as a fiduciary of a corporation, he may be shielded from that state's exercise of personal jurisdiction over him. *See Sage Computer Technology v. P-Code Distrib. Corp.*, 576 F.Supp. 1194, 1196 (D. Nev. 1983).  Plaintiff alleged that Mr. Laessig "owns, controls and/or operates" the Fidelity Business Groups. (Complaint 2:25–26, ECF No. 1).  Defendants assert that since the contacts that give rise to Plaintiff's cause of action all arise exclusively from Mr. Laessig's role as a fiduciary of Fidelity Federal Group, there can be no personal jurisdiction over Mr. Laessig.[1]

There is a separate contact which may give rise to personal jurisdiction over Mr. Laessig.  Plaintiff presents evidence that Mr. Laessig is a licensed insurance agent of

---

[1]  Defendants also argue that since Fidelity Federal Group is not licensed or located in Nevada personal jurisdiction should be lacking as argued *supra*.  However, Defendants cannot have it both ways. Either Mr. Laessig was in Nevada soliciting business from Mr. Corbo on his own behalf or on behalf of Fidelity Federal Group.  The end result is that a Fidelity Federal policy was issued to Mr. Corbo and one of these Defendants profited from it.  Since the evidence shows that Mr. Laessig was acting in his capacity as President of Fidelity Federal Group, the Court finds that the proper party to assert jurisdiction over is Fidelity Federal Group.

1  Nevada.  N.R.S. 683A.281 requires a nonresident licensee such as Mr. Laessig to "appoint

2  the Commissioner in writing as his or her attorney upon who may be served all legal process

3  issued in connection with any action or proceeding brought or pending in" Nevada.

4  However, there is a split in authority on whether merely designating a local agent for service

5  of process constitutes as consent to local jurisdiction.

6      To determine if the Nevada statute's requirement constitutes consent to personal

7  jurisdiction the Court looks to Nevada Supreme Court cases to determine the meaning of the

8  statute. *See King v. American Family Mut. Ins. Co.*, 632 F.3d 570 (9th Cir. 2011)(holding

9  that federal court should look first and foremost to a state's construction of its own statute to

10  determine whether appointment of an agent for service of process is a sufficient basis for the

11  exercise of personal jurisdiction over a foreign corporation).

12      The Nevada Supreme Court has not determined whether appointing the commissioner

13  as one's agent for service of process under N.R.S. 683A.281 gives rise to consent to personal

14  jurisdiction.  However, the Nevada Supreme Court has determined the meaning of a similar

15  statute, N.R.S. 680A.250.  The two provisions read almost identically.  N.R.S. 680A.250

16  governs the appointment of the commissioner as an agent for service of process for *insurers*

17  versus N.R.S. 680A.281 which governs *producers*, i.e. licensees.  In *Freeman v. Second*

18  *Judicial Dist. Court ex rel. County of Washoe*, the Nevada Supreme Court held that "the

19  appointment of an agent to receive service of legal process pursuant to N.R.S. 680A.250

20  does not in itself subject a non-resident insurance company to the personal jurisdiction of

21  Nevada Courts." 1 P.3d 963, 968 (Nev. 2000).  Accordingly, this Court finds that the

22  requirement in N.R.S 680A.281 that a non-resident licensee appoint the Commissioner as its

23  resident agent does not subject a non-resident insurance producer to the personal jurisdiction

24  of the Federal District Court of Nevada. *See King*, 632 at 575 ("the default rule [is] that, in

25  the absence of broader statutory language or state court interpretations, the appointment of an

agent for the service of process is, by itself, insufficient to subject foreign corporations to suits for business transacted elsewhere.).  Therefore, this Court does not have personal jurisdiction over Mr. Laessig.

### C.     Venue

When federal jurisdiction is based upon diversity of citizenship, 28 U.S.C. § 1391(a) specifies that venue will lie in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State,
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
> (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Section two provides that jurisdiction will lie in a judicial district where a substantial part of the events giving rise to the claim occur, not all of the events.  In tort actions, venue lies were the *parties acted* or where the *injuries occurred*. *See Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001); *Bates v. C & S Adjusters, Inc*., 980 F.2d 865, 867–68 (2d Cir.1992).

Plaintiff's claims sound mainly in tort, while there is also a breach of contract claim. The alleged torts that give rise to Plaintiff's claims occurred over a period of time.  The initial breaches of fiduciary duty are alleged to occur when Plaintiff's business was solicited by Mr. Laessig while living in Nevada.  Plaintiff conducted all the necessary correspondence and paperwork from Nevada when the Lafayette policy was converted by UEBF to the Fidelity Federal policy.  The Fidelity Federal policy was cashed out between the Illinois Defendant UEBF and Pennsylvania Defendant Fidelity Federal Group.  When the Fidelity Federal policy was cashed out, Plaintiff was living in Arizona so arguably the economic harm arose there at this time.  Consequently, there is a long string of events that occurred

among many states relating to Defendants' alleged duties to Plaintiff.

The Court finds that a substantial part of these torts began and took place in Nevada. Any fiduciary responsibilities that were owed to Plaintiff on behalf of the Defendants occurred during the time Plaintiff was living and working in Nevada and arise out of the parties conduct in this state.  Accordingly venue is proper in Nevada.

**2.**     **Motion to Dismiss (ECF No. 22) Preemption and Failure to State a Claim**

Also before the Court is Defendants The Trustees of the United Employee Benefit Fund, United Employee Benefit Fund, United Employee Benefit Fund Trust Agreement's (hereinafter "UEBF") Motion to Dismiss (ECF No. 22) for failure to state a claim, ERISA preemption and lack of venue.[2]  Fidelity Federal Group filed a Joinder to UEBF's Motion to Dismiss (ECF No. 26).

**A.**     **Preemption under ERISA**

Defendants UEBF argue in their Motion to Dismiss (ECF No. 22) that Plaintiff's state law claims are preempted by ERISA and as such Plaintiff's suit must be dismissed because Plaintiff has failed to exhaust administrative remedies as required by ERISA.  ERISA applies where an "employee benefit plan" is in place. *See District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 127, 113 S.Ct. 580, 582 (1992).  An employee benefit plan is defined by statute as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3).  An "employee welfare benefit plan" governed by ERISA is:

/ / /

/ / /

---

[2] Defendants UEBF motion the Court to dismiss for lack of venue.  The Court finds that for the same reasons given *supra*, section 1.C, venue is proper in this district.

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, scholarship funds, or prepaid legal services, or....

*Id.* § 1002(1).

In determining the reach of ERISA preemption, "the purpose of Congress is the ultimate touchstone." *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 8, 107 S.Ct. 2211, 2216 (1987).  Section 514(a) of ERISA, 29 U.S.C. § 1144(a), provides:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

Accordingly "[i]f a state law 'relate[s] to ... employee benefit plan[s],' it is pre-empted." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45, 107 S.Ct. 1549, 1552 (1987).

In order to determine if Plaintiff's claims are preempted by ERISA it is important to clarify what the UEBF is and explain all of Plaintiff's participation in its plan.

Defendants UEBF explain that it offers a multi-employer death benefit only ("DBO") welfare benefit plan ("the Plan") under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq.*  Employers can elect to subscribe to the Plan and become a Member Employer.  Employees of the Member Employer are Plan Participants.  UEBF purchases insurance policies with contributions made by the Member Employers to provide death benefits to the Plan Participants.  These insurance policies are owned by

UEBF and the Trustees exercise all ownership rights thereto.   Participation in the Plan is limited to employers with a collective bargaining relationship with the Union.  The parties dispute whether or not Plaintiff was a qualified member participant when the Fidelity Federal policy was purchased.

Plaintiff's allegations arise out of UEBF's conversion of one DBO policy to another DBO policy.  Corcom Inc. d/b/a/ Don Best Sports ("Corcom") became a Member Employer on September 20, 2000. (Fensler Decl. ¶18 p. 4, ECF No. 22–1; UEBF Application, Ex. 4, ECF No. 22–2).   UEBF purchased a $7,500,000 insurance policy on Mr. Corbo's life that became effective on September 28, 2000 ("Lafayette policy").  (Fensler Decl. at ¶22 p. 5; Certificate of Lafayette Benefit, Ex. 7, ECF No. 22–3).  The Lafayette policy was surrendered in January of 2006. (Fensler Decl at ¶27 p. 6).  The UEBF used the cash surrender value of the policy to purchase a new $8,000,000 policy on Corbo's life ("Fidelity Federal policy") which was issued on January 16, 2006. (*Id.*; Fidelity Application Ex. 9, ECF No. 22–4; Certificate of Fidelity Benefit, Ex. 10, ECF No. 22–5).  UEBF was the owner of the new Fidelity Federal policy.  (*See* Fidelity Application Ex. 9).

Defendants UEBF argue that Plaintiff's state law causes of action are preempted because they are related to the DBO policies purchased and owned by UEBF to fund Plaintiff's death benefit under the Plan.  Any fiduciary duties UEBF owed to Plaintiff arise from Plaintiff's participation in the Plan and the DBO policies UEBF purchased under the plan.  Any claims regarding contractual breaches and duties between UEBF and Plaintiff also arise from Plaintiff's participation in the Plan.

Plaintiff argues that ERISA does not preempt his state law causes of action because he was not a participant or beneficiary in an ERISA plan at the time the suit was filed.  *See Miller v. Rite Aid Corp.*, 504 F.3d 1102, 1106 (9th Cir. 2007)("ERISA does not preempt the claims of parties who do not have the right to sue under ERISA because they are neither

participants in nor beneficiaries of an ERISA plan.")  ERISA defines a "participant" as "any employee or former employee… who is or may become eligible to receive a benefit of any type from an employee benefit plan . . . or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7).  "The Supreme Court has interpreted this provision to mean that a party is a 'participant' if he is an employee in, or reasonably expected to be in, currently covered employment, or if he is a former employee who has a reasonable expectation of returning to covered employment, or a 'colorable claim' to vested benefits." *Id.* (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117, 109 S. Ct. 948 (1989)).

The Ninth Circuit has repeatedly held that whether a living party is a "participant" or beneficiary" is determined as of the time the lawsuit is filed. *See e.g.*, *Id*; *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1039 (9th Cir.2006); *Schultz v. PLM Int'l, Inc.*, 127 F.3d 1139, 1141–42 (9th Cir.1997); *Crotty v. Cook*, 121 F.3d 541, 544–47 (9th Cir.1997); *Curtis v. Nevada Bonding Corp.*, 53 F.3d 1023, 1027 (9th Cir.1995); *Parker v. Bain*, 68 F.3d 1131, 1138–39 (9th Cir.1995); *Harris v. Provident Life and Acc. Ins. Co.*, 26 F.3d 930, 933 (9th Cir. 1994); *Olson v. Gen. Dynamics Corp.*, 960 F.2d 1418, 1422 (9th Cir.1991), *cert. denied*, 504 U.S. 986, 112 S.Ct. 2968 (1992); *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 714-15 (9th Cir.1990); *Kuntz v. Reese*, 785 F.2d 1410, 1411 (9th Cir.1986), *cert. denied*, 479 U.S. 916, 107 S.Ct. 318 (1986), *abrogated on other grounds by Kayes v. Pac. Lumber Co.*, 51 F.3d 1449 (9th Cir.1995)*.

Plaintiff argues that since this lawsuit was filed on March 8, 2010 he is not a participant as defined by the Ninth Circuit precedence because he is not a covered employee in a Plan or a former employee with a reasonable expectation of returning to covered employment.  Further, Plaintiff argues that he is trying to recover the contribution to the Fidelity Federal policy.  Plaintiff asserts that the contribution to the Fidelity Federal policy cannot be a benefit of a plan because at the time the Fidelity Federal policy was purchased

Plaintiff was unqualified to be a plan participant.

Defendants UEBF however, argue that the contribution to the Fidelity Federal plan is a vested benefit. The contribution that paid for the Fidelity Federal plan came from the cash surrender value of the Lafayette policy. Plaintiff does not dispute that the Lafayette policy was obtained by the Plan as a part of Plaintiff's participation in the Plan.

The Court agrees that it may be logical to presume that the cash surrender value of the Lafayette policy is a vested benefit of the Plan governed by ERISA; however Defendants have given the Court no authority upon which to make this presumption. Whether or not the cash surrender value of the Lafayette policy was wrongfully converted to the contribution for the Fidelity Federal policy falls under the realm of ERISA is unclear based on the Court's review of Defendants' cited authority. Plaintiff's complaint is asking for the contribution paid by him (or his employer as Defendants UEBF maintain), but not for the benefits of the DBO policy. Defendants admit as much throughout their motion to dismiss and reply. Without more, the Court cannot find that Plaintiff is suing for the benefits of an ERISA plan which is required before the state law claims can be preempted by ERISA. Therefore, the Court finds that Plaintiff's state law claims are not preempted by ERISA.

## B.    Failure to State a Claim

UEBF also argues that Plaintiff's Complaint fails to state a claim. Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, a court takes all material allegations as true and construes them in

the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. South Bay Beer Distrib*., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

UEBF argues that the complaint is deficient and draws legal conclusions that are insufficient to survive a motion to dismiss.  The first legal conclusion is about the ownership of the policy.  The Court finds that nowhere in the complaint does Plaintiff claim to own the policy or deny UEBF's ownership.  The second improper conclusion is that Plaintiff was "unqualified" to "acquire" the policy.  Plaintiff is alleging a fact that could turn out to be true

or untrue.  This does not make Plaintiff's complaint insufficient.  Finally, UEBF explains that Plaintiff's complaint fails because it does not allege facts necessary to explain how UEBF could foretell the future that at some point Plaintiff would become ineligible for the plan.  This does not appear in the face of the Complaint.  Plaintiff's allegations are that at the time the Fidelity policy was purchased UEBF should have known he was ineligible for the policy.  Contrary to UEBF's assertions, Plaintiff has sufficiently plead facts to allege actions for the six causes of action stated in the complaint.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendants Fidelity Federal Financial Services Corporation, Fidelity Federal Group, Fidelity Federal Retirement Plans Corporation (hereinafter "Fidelity Federal Group") and Ronald W. Laessig's ("Mr. Laessig") Motion to Dismiss (ECF No. 10) is **DENIED in part** and **GRANTED in part**.

This Court does not have personal jurisdiction over Defendant Ronald W. Laessig, and therefore all claims against him are **DISMISSED without prejudice**.

This Court does have personal jurisdiction over Fidelity Federal Group and venue is proper in this district.

**IT IS FURTHER ORDERED** that Defendants Fidelity Federal Group and Mr. Laessig's Motion to Strike (ECF No. 25) is **DENIED in part** and **GRANTED in part** in accordance with this Order.

**IT IS FURTHER ORDERED** that Defendants The Trustees of the United Employee Benefit Fund, United Employee Benefit Fund, United Employee Benefit Fund Trust Agreement's (hereinafter "UEBF") Motion to Dismiss (ECF No. 22) is **DENIED**.

DATED this 22nd day of March, 2011.

_____
Gloria M. Navarro
United States District Judge